245 N.J. Super. 318 (1990)
585 A.2d 428
MARK J. PANARELLO, PLAINTIFF,
v.
DIANA M. PANARELLO (NOW KNOWN AS DIANA M. CAPACCIO).
Superior Court of New Jersey, Chancery Division Family Part, Gloucester County.
Decided November 2, 1990.
*320 Diane Vari for petitioner (Basile, Testa & Testa, attorneys).
Diana M. Capaccio, defendant pro se.
HERMAN, J.S.C.
Post-judgment application is made by the firm of Basile, Testa & Testa (B.T.T.) pursuant to N.J.S.A. 2A:13-5 to impress a common-law special or charging lien for legal services which petitioner asserts is $1557.60 and is still due from the client, Diana M. Panarello (now known as Diana M. Capaccio). B.T.T. also petitions to impose a common-law retaining lien on the client's file or, in the alternative, it asks the court to establish a bond to secure the attorney's claim. The client-respondent *321 asserts that there is only $312.50 left to be paid and opposes petitioner's application; she does not oppose B.T.T.'s request to withdraw as counsel.
The procedural history leading to this motion is not in dispute. A divorce judgment was entered on August 17, 1985. In May 1990, post-judgment cross motions were filed by plaintiff and defendant for enforcement of litigant's rights. The motions were heard in June and an order issued. As part of this post-judgment order, the court required that a psychological exam be conducted as to visitation issues and that a report be submitted to the court within 60 days thereafter. The psychologist's report was, in fact, issued in August 1990; copies were circulated to counsel.
At the post-judgment motion, each party was represented by new counsel, defendant by Richard Pescatore, then a lawyer-employee with B.T.T. On September 6, 1990, Pescatore left B.T.T. for other employment. B.T.T. asserts the client now chooses to be represented by Pescatore. No claim or action is pending before the court by defendant for the return of her file or for any other relief (although given the difficult visitation issues involved, as with many family actions, more post-judgment applications or review may be required).

I.
The common-law special or charging lien is an active lien. It may be asserted by an attorney for services rendered in a legal proceeding and attaches to the judgment or the final order in the case for which services were rendered. Brauer v. Hotel Associates, Inc., 40 N.J. 415, 420, 192 A.2d 831 (1963). Its scope was enlarged by statute (N.J.S.A. 2A:13-5); but that statute clearly has limits.
Lien for Services.
After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counsellor at law, who shall appear in the cause for the party instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a *322 lien for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending upon the petition of the attorney or counsellor at law, may determine and enforce the lien. [N.J.S.A. 2A:13-5]
N.J.S.A. 2A:13-5 was designed to protect an attorney's fee after commencement of a cause of action, counter-claim, cross-claim, third-party claim or other claim; the lien is to attach to the judgment, final order or decree in the client's favor. Visconti v. M.E.M. Machinery Corporation, 7 N.J. Super. 271, 73 A.2d 74 (App.Div. 1950). The attorney's lien protected the fee for services rendered in securing the judgment, final order or verdict on behalf of a client. McCarthy v. McCarthy, 117 N.J. Eq. 22, 174 A. 751 (N.J.Err. & App. 1934). N.J.S.A. 2A:13-5 further provides that for a lien to be effective it must be brought during the time the action or other proceeding is pending. Likewise, there is no provision in this legislation to allow an attorney's lien to be asserted for post-judgment legal services.[1]
*323 Where the language of a statute is clear and unambiguous, it is the function of the court to enforce the statute as written. Any enlargement of remedy or scope lies exclusively within the province of the legislature. Accordingly, B.T.T.'s application for a statutory lien is denied.

II.
A common-law retaining lien is a passive lien; it cannot be actively enforced through legal proceedings and rests wholly upon the right to retain possession of the client's property until the entire balance due for legal services and disbursements is paid. Brauer v. Hotel Associates, Inc., supra, 40 N.J. at 419-420, 192 A.2d 831.
There being no application by the client before this court against B.T.T. for possession of the file, there is nothing to litigate. Accordingly, petitioner's application for a retaining order or, in the alternative, to require defendant to post a bond is denied. However, the court sua sponte, directs a return of the psychological report in petitioner's file to new counsel. (§ III, Infra).

III.
A common-law retaining order cannot attach to documents in the attorney's file where the attorney does not have a work product or possessory claim. Court ordered, psychological reports are such documents. These psychological reports are the property of the court. These reports are submitted to counsel and the parties for their use, subject to R.5:3-3(e), and are further subject to such reasonable conditions of "loan" that the court may impose.
*324 Acting upon recommendations made by its committee on family practice, 122 N.J.L.J. 132-133 (1988), the Supreme Court reorganized R.5:3-3 to make it clear that parties and their counsel are entitled to receive copies of all reports prepared and submitted by court appointed medical, psychological, social and economic experts:
Submission of Report.
Any finding or report by an expert appointed by the court shall be submitted upon completion to both the court and the parties. The parties shall thereafter be permitted a reasonable opportunity to conduct discovery in regard thereto, including, but not limited to, the right to take the deposition of the expert. [R.5:3-3(e)]
This rule, like other similar rules and statutes, is designed to protect the interests of children and families. Also inherent in all family actions is the court's broad discretion in setting confidentiality parameters. See N.J.S.A. 2A:4A-60 (social, medical, psychological, legal and other records of court and probation department strictly safeguarded from public inspection subject to limited, defined exceptions set forth in statute); N.J.S.A. 9:3-52 and -55 (adoption record of proceedings and other reports deemed sealed); N.J.S.A. 9:6-8.10a (report and information regarding child abuse and neglect cases deemed confidential); N.J.S.A. 9:17-42 (termination of parental rights requires closed court hearing; records are to be confidential); R.5:3-2 (court's discretion in family actions to close all or part of proceeding involving welfare or status of child); R.5:8-4 (probation social investigation report furnished to parties is to be regarded as confidential, unless otherwise provided by statute or court order).
This court, in order to safeguard the interests of the child, to negate dissemination of sensitive information to third parties and to avoid potential party misuse  for psychological and psychiatric reports were never intended for home, coffee-table display  required that the court-ordered psychological report, once submitted to the attorneys of record, be retained by those attorneys. Further, to insure that confidentiality goals set by the court were maintained, the court ordered that each party's *325 review take place in their attorney's office or in the presence of their attorney. Based on correspondence in the court's file, it appears review has been accomplished. Based on that review, plaintiff's counsel may be seeking further intervention by the court, although that application has not been made to date.
As indicated, this psychological report has been submitted on loan to counsel and the parties for their use in conjunction with the ongoing visitation problems. Since B.T.T. is no longer the attorney of record, petitioner clearly has no further need for the report. Conversely, new counsel will have such need (perhaps, as a reference for implementing visitation through joint client/counsel interconferencing or for follow-up with the psychologist or for further application to the court, etc.). Therefore, petitioner, B.T.T., is directed to transfer forthwith the psychological report in its file to Richard Pescatore.
Within seven days from receipt of this opinion, counsel for petitioner is directed to prepare an appropriate order.
NOTES
[1] Since courts have prohibited R.4:42-9, attorney fee applications, in matrimonial actions, Cohen v. Cohen, 146 N.J. Super. 330, 369 A.2d 970 (App.Div. 1977), attorney lien applications are becoming more prevalent. Rosenfeld v. Rosenfeld, 239 N.J. Super. 77, 570 A.2d 1026 (Ch.Div. 1989). Where warranted, the lien should be solely granted to preserve a fund which the attorney may attach once a money judgment is obtained. The action to collect, however, is not, by definition, a dispute contemplated as a family action by statute or rule (see N.J.S.A. 2A:4-3a et seq. and Statement to Assembly Bill 596 (1983), L. 1983, c. 405, "... the jurisdiction in those cases shall extend over the juvenile, his parents or guardian or a family member ... contributing ... to a family crisis case"; see also R.5:1-1; R.5:1-2).

In light of current law and other legislation now granting an attorney the right to institute an action to collect his fee, the attorney/client dispute being an action in contract lies in the Law Division, or Law Division Special Part, R.4:3-1(a)(4), subject, of course, to the attorney's obligation (in lien applications as well) to serve notice that the client has the right to invoke fee arbitration pursuant to R.1:20A-1 et seq. Rosenfeld v. Rosenfeld, supra. To hold, otherwise, would improperly extend the definition of "family" to "lawyer/client" and would have the unwelcome result of encouraging additional family court mini-trials though adequate remedies for resolving such disputes exist in the Law Division or fee arbitration proceedings.