**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5968-17T1

ROBIN KOVAL,

      Plaintiff-Respondent,

v.

CLIFFORD STERN,

      Defendant-Appellant.

_____

          Argued July 23, 2019 – Decided August 1, 2019

          Before Judges Ostrer and Geiger.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0473-05.

          Dale Elizabeth Console argued the cause for appellant.

          Brian Elliot Fleisig argued the cause for respondent.

PER CURIAM

      Defendant Clifford Stern appeals from a post-judgment Chancery Division order denying his motion to: (1) enforce the property settlement

agreement (PSA); (2) impose sanctions on plaintiff Robin Koval for violating the PSA; (3) compel reunification therapy with the parties' children; (4) reduce child support; (5) compel plaintiff to produce an updated case information statement with copies of recent income tax returns, W-2 forms, and year-to-date income information; (6) reduce the amount of life insurance defendant is required to maintain to secure his child support obligation; and (7) award defendant counsel fees. Despite defendant's request for oral argument, the trial court decided the motion without oral argument or a plenary hearing. He also appeals from an order that denied reconsideration and awarded plaintiff counsel fees. We vacate the orders and remand.

The parties were married in 1994. Two children were born of the marriage. Their son was born in December 1996; their daughter was born in February 1999. The parties were divorced in 2004. The terms and conditions of the PSA were incorporated into the judgment of divorce. Pertinent to this appeal, the parties shared joint legal custody of the children with plaintiff designated as parent of primary residence and defendant designated as parent of alternative residence. A parenting time schedule was included. Defendant agreed to pay plaintiff child support of $2000 per month until the marital home was sold, and $4000 per month thereafter. Defendant agreed to maintain health

2

insurance on the children and to pay all unreimbursed medical expenses. Defendant also agreed to pay all expenses associated with the children's summer activities, including summer camp, lessons, and extracurricular activities. Defendant was required to maintain a $1,500,000 life insurance policy to secure his child support obligation, allocated $750,000 per child. Defendant was permitted to reduce the coverage by $750,000 upon emancipation of their son, and to terminate coverage upon emancipation of both children.[1] Each party agreed to be responsible for their own counsel fees and defendant waived any claim to the $7500 in marital assets plaintiff used for counsel fees. The PSA did not apportion responsibility for college expenses. Instead, it provided the parties were to consult with each other in an effort to agree regarding the children's college education.

A subsequent consent order was entered in June 2015 regarding college contribution, child support, and responsibility for the children's expenses. The consent order set defendant's child support obligation at $6000 per month. Defendant agreed to contribute the sum of $25,000 per year toward their son's

---

[1] Notably, the PSA provided for annually decreasing coverage requirements to secure defendant's spousal support obligation, commensurate with the declining remaining balance of the term alimony provision. There was no similar reduction in life insurance coverage securing defendant's child support obligation, other than emancipation.

college education and expenses. Plaintiff agreed to be solely responsible for the children's extracurricular and related expenses commencing May 5, 2015. Defendant agreed to continue health insurance coverage for the children until emancipation. Excepting as to certain defined extraordinary situations, plaintiff agreed to be responsible for all unreimbursed medical expenses. The parties agreed to be responsible for their own legal fees. The consent order was silent as to the life insurance securing defendant's child support obligation.

In March 2018, defendant sought to reduce child support from $6000 to $2000 per month, retroactive to September 1, 2017, and to reduce life insurance from $750,000 to $100,000 per child, since both children were over eighteen years old, attending college, and living on campus for eight to nine months per year. Their daughter began attending Wisconsin University in August 2017. Defendant contended their daughter residing at college constituted a change in circumstances warranting a reduction in child support since the child support of $6000 per month was established while their daughter resided at home with plaintiff. Defendant also asserted he wanted to be involved in their daughter's college selection process, but plaintiff refused to allow it.

Defendant requested oral argument and a plenary hearing. Despite conflicting certifications, the trial court denied defendant's request for oral

4

argument and ruled on the papers in plaintiff's favor, denying defendant's motion in its entirety. The trial court also denied plaintiff's application for counsel fees. In its written statement of reasons, the court stated:

> The court cannot find that the defendant's alleged deteriorated relationship with the children is the fault of the plaintiff. The defendant certified that his relationship with the children was "very good" prior to the summer of 2014. The parties entered into a well-detailed June 25, 2015 consent order making no reference to the defendant's relationship with the children. Defendant then waited three more years to file for such relief. The children are now ages 19 and 21, and the court will not compel the children of such age and under these circumstances to engage in reunification therapy.
>
> There is no change of circumstances pursuant to Lepis v. Lepis, 83 N.J. 139 (1980), to modify child support. The current child support obligation was entered pursuant to the June 25, 2015 consent order [when their son] was in college and [their daughter] was in high school. That [their daughter] may be going away to college was foreseeable at the time. Moreover, the amount of child support, as per paragraph 1 of the June 25, 2015 consent order, was "in consideration for the parties' agreement as contained herein." The defendant admittedly earns the same as he did then. The court also finds it telling that the defendant's statement, "If the children continue to refuse to reconcile with me, there has to be some consequences for their behavior" comes just before the section entitled "Child Support Reduction".
>
> As to life insurance, the Property Settlement Agreement is clear. It is not as if the age difference of

5

the children has changed. It is what the parties bargained for.

> The request for counsel fees was considered in light of [Rule] 4:42-9 and [Rule] 5:3-5. The [eight and one-half] hours described in the certification of plaintiff's attorney as "strategizing and discussion" is too general. Although defendant's requests were denied, it is not found that defendant sought relief out of bad faith.

Defendant moved for reconsideration of the denial of his seven claims for relief. He argued the trial court erred by deciding the motion without oral argument and without conducting a plenary hearing despite the contested material facts contained in the parties conflicting certifications.

Defendant further argued the June 2015 consent order did not waive his right to review child support when the parties' daughter went to college and the court should not assume an intent that was not set forth in the consent order. He noted their daughter was only sixteen years old and a sophomore in high school when the consent order was entered. Their daughter was enrolled full-time in college and residing at school when defendant moved for a reduction in child support in March 2018. He argued this constituted a change in circumstances warranting review of the amount of child support.

Defendant also argued plaintiff violated the joint legal custody agreement and his demand for reunification therapy was appropriate. Defendant contended

6

the delay did not constitute a waiver of his right to pursue the claim or laches. Defendant further argued the trial court erred by denying his request to reduce the amount of life insurance he was required to maintain given the age of the children and the ability to define their expenses. Finally, defendant argued the trial court erred by denying his application for counsel fees when plaintiff acted in bad faith and with unclean hands.

Plaintiff opposed the motion and cross-moved for an award of counsel fees incurred in doing so. She contended defendant filed for reconsideration in bad faith and because he was dissatisfied with the court's decision. Plaintiff sought counsel fees of $3087.50 calculated at the rate of $325 per hour.

The trial court heard oral argument on the cross-motions and rendered an oral decision denying reconsideration and granting plaintiff $2500 in counsel fees. The trial court found the motion for reconsideration was "an attempt at a second bite of the apple" filed because "defendant is merely unhappy" with the court's prior decision. The court concluded there was nothing new that convinced the court otherwise. The court clarified it did not find defendant was the cause of the deterioration of the relationship with the children, but could not find the deterioration was the fault of plaintiff. The court noted the June 2015 consent order made no reference to defendant's relationship with the children

and defendant waited three years to seek relief on that issue. The court also determined it would not compel reunification therapy with children who were twenty-one and nineteen years old. With respect to reducing defendant's life insurance obligation, the court found no basis to review that unambiguous provision in the PSA.

As to reducing child support, the court noted the June 2015 consent order increased child support from $4000 to $6000 per month[2] when one child was in college and one still in high school, and also required defendant to pay $25,000 per year towards their son's college costs. The trial court then explained:

> Plaintiff has not sought to have the defendant contribute to the younger child's college costs. And, let's say for the sake of argument, I were to re-open that whole issue, it's conceivable that the contribution for [the younger child's] college fees could be another $25,000 a year. The total support package, it would seem to me, would most likely increase significantly.
>
> And, again, the notice of motion specifically sought the reduction of child support from [$6000] to [$2000] a month. There was no basis or justification for that adjustment. And, I also note, as I did previously, that the [$6000] was set in consideration for the parties agreement contained therein, which covers a whole panoply of reasons.

---

[2] The trial court mistakenly stated the child support obligation was weekly, rather than monthly.

A-5968-17T1

Finally, with respect to defendant's application for counsel fees, the trial court found sanctions against plaintiff were not appropriate or required. As to plaintiff's application for counsel fees, the court concluded the hourly rate charged by plaintiff's counsel was reasonable, and found plaintiff's opposition to reconsideration was reasonable and undertaken in good faith. The trial court also found defendant had the ability to pay counsel fees. The court awarded plaintiff counsel fees of $2500. This appeal followed.

Defendant argues the trial court abused its discretion in denying oral argument on the initial motion and ruling on the papers where the conflicting certifications and inadequate proofs mandated a plenary hearing.

Our review of Family Part child support decisions is limited. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). However, if the dispute centers on an "alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom," our "traditional scope of review is expanded." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). "[T]he trial judge's legal

conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Reese, 430 N.J. Super. at 568). "When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." Catabran, 445 N.J. Super. at 587 (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)).

The trial court determined the daughter's full-time enrollment in college and living on campus during the school year was not a change in circumstance. We disagree. A "child's attendance at college is a change in circumstances warranting review of the child support amount. However, there is no presumption that a child's required financial support lessens because he or she attends college." Jacoby, 427 N.J. Super. at 113. Although "[t]he payment of college costs differs from the payment of child support for a college student," they are "related obligations imposed on parents." Id. at 121 (quoting Hudson v. Hudson, 315 N.J. Super. 577, 584 (App. Div. 1998)). While the need for child support may decrease in certain respects, such as room and board, which are typically college costs, we have also recognized "the possible continued need to maintain a local residence for a child who returns home from college during school breaks and vacations." Ibid. (citing Hudson, 315 N.J. Super. at 585).

10

Moreover, "other necessary expenses may remain the same or actually increase when a child goes to college." Ibid. For example, a child going away to college may need furniture, linens, bedding, and other assorted household items. Ibid. The student's ability to contribute to those expenses must also be considered. Id. at 122.

Because child support determinations in this context are fact-sensitive, "courts faced with the question of setting child support for college students living away from home must assess all applicable facts and circumstances, weighing the factors set forth in N.J.S.A. 2A:34-23(a)." Id. at 113. The fact that their daughter was expected to attend college is not determinative. "[C]hanged circumstances are not limited in scope to events that were unforeseeable at the time of divorce" or entry of the consent order, both of which occurred years before their daughter began college. Lepis v. Lepis, 83 N.J. 139, 152 (1980). This is particularly true in cases involving modification of child support, where a child lives away from the custodial parent's home during the school year while attending college full-time.

The trial court decided defendant's motion and plaintiff's cross-motion on the papers even though both parties requested oral argument. Rule 5:5-4(a) expressly directs the Family Part "shall ordinarily grant requests for oral

11

argument on substantive and non-routine motions." See S.M. v. K.M., 433 N.J. Super. 552, 557 n.5 (App. Div. 2013) (noting "requests for oral argument should ordinarily be honored, especially in family motions"); Filippone v. Lee, 304 N.J. Super. 301, 306 (App. Div. 1997) (noting oral argument should be permitted "as a matter both of due process and the appearance of due process"). We discern "no special or unusual circumstances here warranting the court's dispensing with an entirely appropriate request for oral argument of a motion presumptively entitled to argument on request." Filippone, 304 N.J. Super. at 306. Because the issues raised by defendant were significant and involve conflicting certifications, the trial court abused its discretion by declining to hear oral argument. We are constrained to vacate the orders that are the subject of this appeal and remand for oral argument.

With regard to child support, the trial court shall consider the factors set forth in Jacoby and N.J.S.A. 2A:34-23(a) and make findings. Jacoby, 427 N.J. Super. at 113, 121-122.

Regarding defendant's application to reduce his obligation to maintain life insurance to secure his child support obligation, we note the PSA did not provide for periodic coverage reductions. Instead, it permitted coverage reduction upon emancipation. Although this may evidence an intent to fix the amount of

A-5968-17T1

coverage, that the amount was set in the PSA "does not conclude the discussion." Schwarz v. Schwarz, 328 N.J. Super. 275, 286 (App. Div. 2000). "Both consensual agreements and judicial decrees are subject to the same standard of 'changed circumstances.'" Ibid. (quoting Lepis, 83 N.J. at 148). Indeed, the amount of life insurance is normally "commensurate with the extent of the balance of a payor's obligations." 2 Gary N. Skoloff & Lawrence J. Cutler, N.J. Family Law Practice 5:39 (15th ed. 2013). Here, the life insurance obligation was established when the children were very young. On remand, the trial court shall consider and make findings as to whether the parties intended to fix the amount of coverage until emancipation. Exploring the drafting history of the PSA may illuminate this issue. If the court finds the parties did not intend to fix the amount of coverage, the court shall consider the age of each child, the degree of completion of their college education, and the projected remaining support obligation, in determining whether defendant's life insurance obligation should be modified.

As to the cross-motions for counsel fees, the trial court shall consider the factors set forth in Rule 5:3-5(c) and make findings. "Trial judges are under a duty to state reasons in support of their conclusions." Giarusso v. Giarusso, 455 N.J. Super. 42, 53 (App. Div. 2018) (quoting Heinl v. Heinl, 287 N.J. Super.

13                                                                    A-5968-17T1

337, 347 (App. Div. 1996)).  A counsel fee award that is unsupported by adequate findings must be set aside.  Clarke v. Clarke ex rel. Costine, 359 N.J. Super. 562, 572 (App. Div. 2005).  Thus, merely referring to the rule and stating whether the applications were made in good faith is insufficient.[3]

We leave it to the sound discretion of the family judge on remand to determine whether a plenary hearing is necessary to decide the issues presented after considering oral argument.  A plenary hearing is necessary if "the submissions show there is a genuine and substantial factual dispute" and the court concludes "a plenary hearing is necessary to resolve the factual dispute." Catabran, 445 N.J. Super. at 592 (quoting Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007)).

Vacated and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Plaintiff contends defendant is litigating this matter in bad faith, in part, to drive up her attorney's fees by pursuing meritless applications.  If the trial court substantiates that claim, counsel fees may be awarded to plaintiff in accordance with Rule 5:3-5(c)(3).

A-5968-17T1