**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1675-22

NAFTALI ABAYEV,

     Plaintiff-Appellant,

v.

STELLA ABRAMOV,
f/k/a STELLA ABAYEV,

     Defendant-Respondent.

_____

Argued February 14, 2024 – Decided March 1, 2024

Before Judges Firko and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0744-17.

Naftali Abayev, appellant, argued the cause pro se.

Respondent has not filed a brief.

PER CURIAM

    Plaintiff Naftali Abayev, who is self-represented, appeals from a January

27, 2023 Family Part order denying his request for make-up parenting time with

the parties' then fifteen-year-old daughter Leah. Because we conclude the motion judge did not abuse her discretion by determining plaintiff could not identify any specific instances of lost parenting time, and the evidence supports that determination, we affirm. Plaintiff also appeals from the award of counsel fees to defendant. We reverse and remand the award of counsel fees because the motion judge did not address the factors required by Rules 5:3-5(c), 4:42-9, and RPC 1.5(a).

I.

We summarize the facts developed from the record. Plaintiff and defendant Stella Abramov, formerly known as Stella Abayev, were married in 1994, divorced in 2017, and have three children: Mark, David, and Leah. Mark and David are emancipated. Leah is now sixteen years old and resides with defendant.

The parties' judgment of divorce (JOD) incorporated a marital settlement agreement (MSA). The JOD and MSA are not contained in plaintiff's appendix, but a single page parenting time schedule entitled, "Holidays and Special Days" was provided, which sets forth holidays that shall be alternated between the parties each year. The winter break is not mentioned in the document. Pertinent here, however, is a January 18, 2022 order that provides, "The parties shall

evenly share parenting time over the winter recess." However, the order did not address the specific date or time for Leah's transfer from one party to the other.

The parties have engaged in ongoing and contentious litigation over parenting time issues involving Leah since their divorce. The record shows on July 18, 2022, plaintiff filed a motion seeking "future ma[k]e up parenting time," which defendant opposed. It is unclear from the record whether plaintiff sought to make up future parenting time during the winter recess. In any event, on October 7, 2022, a prior judge rendered an oral opinion denying the motion. Plaintiff did not provide a copy of the transcript in his appendix. A memorializing order was entered that day.

Four days later, plaintiff filed a motion to change visitation arrangements, primarily seeking four weeks of summer parenting time with Leah instead of three weeks, which he claimed to have. On November 4, 2022, the prior judge entered an order referring the matter to Custody and Parenting Time Mediation pursuant to Rule 1:40-5 within thirty days to address these and other parenting time issues.[1]

---

[1] Ultimately, the mediation took place on February 1, 2023, after the order under review was entered. The parties did not reach a resolution and returned to the court on February 10, 2023. On February 16, 2023, the court entered an order denying plaintiff's motion.

A-1675-22

On December 28, 2022, plaintiff filed an emergent order to show cause (OTSC) seeking parenting time with Leah during the winter recess. The next day, another judge entered an order[2] based on her conclusion that:

> Plaintiff's application for [e]mergent [r]elief by way of an [OTSC] is **DENIED** and is without merit. Plaintiff sought enforcement of parenting time and alleged defendant had withheld the child. Plaintiff did not disclose to the court that he, in fact, had the child since 9:00 a.m. this morning. There was no exact time specified for the split of winter break, defendant informed plaintiff when she could get the child to the drop-off. Plaintiff should have withdrawn the application after he received the child. Defendant's counsel may file for counsel fees with any future application. There was no need for a court appearance today. The matter does not meet the standards per Crowe v. De Gioia, 90 N.J. 126 (1982).

Thereafter, plaintiff immediately filed a motion seeking make-up parenting time with Leah. He claimed he lost approximately fifteen hours of parenting time between the evening of December 28 overnight to the morning of December 29, 2022, because defendant withheld Leah from him for no valid reason. Plaintiff also claimed defendant disregards court orders and makes excuses for missing scheduled parenting time. Since the JOD was entered,

---

[2] The order contains a clerical error as it states a non-dissolution docket number, FD-13-0744-17, instead of the correct dissolution docket number, FM-13-0744-17.

4

plaintiff alleged he missed more than twenty days of parenting time. Defendant opposed the motion.

On January 27, 2023, the motion judge conducted oral argument. At the hearing, the motion judge preliminarily noted that plaintiff has parenting time with Leah on alternating weekends from Friday overnight to Sunday. He picks up Leah from defendant's home and drops her off at the Cranford police station. On some occasions, plaintiff has parenting time on Saturday overnight to after sundown on Sunday when defendant observes Shabbat.

Plaintiff argued defendant violated the January 2022 order, which states the parties shall equally share parenting time during the winter break. Defendant's counsel countered that plaintiff could have driven to defendant's residence to pick up Leah, and he chose not to. Defendant's counsel also argued that no make-up parenting time is warranted because on the missed days, Leah was either sick, had other plans, or was on a religious retreat.

Defendant's counsel also asserted that plaintiff was opposed to Leah joining her school's softball team and wants her to play soccer instead. Defendant's counsel argued that plaintiff threatened to call the school and sue defendant for "criminal negligence" if she did not cancel softball and select "a more proper" and "less dangerous sport."

5

In her oral decision following arguments that day, the motion judge observed plaintiff did not provide "any specifics" to support his motion for make-up parenting time, "other than this possible fifteen hours," and found "there's nothing specified or proven." The motion judge determined "[t]he evidence is clearly lacking in that regard." Regarding sports, the motion judge noted that plaintiff no longer objected to Leah playing softball. The motion judge directed the parties to cooperate and endeavor "not to schedule things during each other's parenting time." The motion judge ruled that she would grant defendant's request for an award of counsel fees pertaining to the OTSC after reviewing the certification of services, which is not provided in the record.

A memorializing order was entered the same day incorporating the motion judge's oral decision. The order also specified that the parties split the winter break, and each party had five days with the child, defendant having December 24, 25, 26, 27, and 28, and plaintiff having December 29, 30, 31, January 1, and 2. The motion judge determined there was no violation of a custody or parenting time order and compensatory time was not warranted under Rule 5:3-7(a), which provides for certain remedies on violation of orders relating to parenting time.

The order stated that plaintiff gave "no reasonable explanation for his objection" to Leah playing school softball and indicated Leah is old enough to

express her own "desire as to sports or activities she chooses." The motion judge granted defendant's request for counsel fees associated with the December 28, 2022 emergent OTSC and the instant application, but the order does not state the amount of fees awarded. This appeal followed.

## II.

Plaintiff essentially presents two arguments. First, he contends the motion judge should not have denied his request for make-up parenting time over the winter recess. Second, plaintiff argues he should not be responsible for defendant's attorney's fees because he does not have the financial ability to pay and cannot afford to hire an attorney to represent him.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We accord deference to the family courts due to their "special jurisdiction and expertise" in family law matters. Id. at 413. The court's findings are binding so long as its determinations are "supported by adequate, substantial, credible evidence." Id. at 411-12. We will not disturb the factual findings and legal conclusions unless convinced they are "so manifestly unsupported by or inconsistent" with the evidence presented. Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv's. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

7

However, we owe no deference to the court's interpretation of the law. <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

The primary concern of a court confronted with a dispute over parenting time is the best interest of the children. <u>See</u> <u>Sacharow v. Sacharow</u>, 177 N.J. 62, 80 (2003); <u>Wilke v. Culp</u>, 196 N.J. Super. 487, 497 (App. Div. 1984). The court must consider "what will 'protect the safety, happiness, physical, mental and moral welfare of the child.'" <u>Mastropole v. Mastropole</u>, 181 N.J. Super. 130, 136 (App. Div. 1981) (quoting <u>Beck v. Beck</u>, 86 N.J. 480, 497 (1981)) (internal quotation marks omitted). "Modification of [a parenting time] order may be appropriate if the moving party shows the modification requested is in the best interests of the child[ren]." <u>Finamore v. Aronson</u>, 382 N.J. Super. 514, 522 (App. Div. 2006).

"A judgment, whether reached by consent or adjudication, embodies a best interests determination." <u>Todd v. Sheridan</u>, 268 N.J. Super. 387, 398 (App. Div. 1993). Accordingly, when a parent seeks to modify a parenting time schedule, that parent "must bear the threshold burden of showing changed circumstances which would affect the welfare of the [child]." <u>Ibid.</u> The moving party must demonstrate a change in circumstances from those existing when the prior parenting time order was entered. <u>Ibid.</u>

A-1675-22

Applying these principles, we discern no abuse of discretion in the motion judge's decision denying plaintiff's request for make-up parenting time over the winter recess. Plaintiff's request for make-up parenting time—as of the January 27, 2023 hearing—was limited to the winter recess and founded on his assertion that the time was to be evenly divided between the parties, down to hours and minutes. He also more generally argues that he is entitled to make-up parenting time arising out of the past course of conduct between the parties, because of the alleged deleterious effect on his relationship with Leah.

Plaintiff's conclusory allegations, however, are untethered to any competent evidence that defendant deliberately interfered with his parenting time over the winter recess, or that she has violated the multiple parenting time orders in place. Plaintiff has also failed to demonstrate that any purported lost parenting time would be remediated by make-up parenting time. Plaintiff's assertion about the winter recess parenting time schedule is unsubstantiated and merely based on speculation and conjecture because the exact time for winter recess exchange of Leah is not mentioned in the JOD, MSA, or January 18, 2022 court order. The motion judge did not abuse her discretion by denying plaintiff's motion.

A-1675-22

Moreover, plaintiff's emergent OTSC likewise lacked merit and was properly denied for these reasons. Plaintiff failed to present any evidence that defendant violated the JOD, MSA, or any court order that would inure to the best interest of his daughter.

III.

Next, plaintiff argues the motion judge erred in awarding counsel fees to defendant. He asserts the motion judge paid short shrift to Rules 5:3-5(c), 4:42-9, and RPC 1.5(a).

The motion judge found plaintiff proceeded in bad faith in filing the emergent OTSC, and his make-up parenting time motion was frivolous because it lacked specificity and proof of wrongdoing by defendant. In particular, the motion judge noted that plaintiff already had Leah for his parenting time when he filed the OTSC, and "there was clearly no emergency." The motion judge observed plaintiff also sought make-up parenting time with Leah for "many, many occasions" in the past where he alleged he was deprived of parenting time.

The motion judge also noted that plaintiff filed the motion for parenting time within two hours after his request for relief in an OTSC was denied. Instead of seeking to maximize parenting time with his daughter, who was delivered to him at 9:30 a.m., the motion judge found plaintiff "spent many hours" during

the day in question filing these pleadings. The motion judge also stated the unsuccessful OTSC was filed during the court recess when defendant's attorney was away on vacation, and she had to make herself available for court, resulting in defendant incurring fees. The motion judge concluded that based on plaintiff's testimony, his "motive was not to spend time with his daughter, but to punish the mother for what he believed was her wrongdoing based on his interpretation of their agreement." The motion judge added that plaintiff "used his pro se status to file frivolous pleadings without fear of repercussion or fees incurred."

Counsel fee determinations "rest[] within the sound discretion of the trial judge." Gotlib v. Gotlib, 399 N.J. Super. 295, 314-15 (App. Div. 2008) (quoting Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002)). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Generally, "the party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted

in good faith in the litigation."  J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (citing Guglielmo v. Guglielmo, 253 N.J. Super. 531, 545 (App. Div. 1992)).  When both parties have a "sufficient ability to satisfy [their] attorney's fee obligation, and neither . . . proceeded in bad faith," the court may justifiably deny the award of counsel fees.  Reese v. Weiss, 430 N.J. Super. 552, 586 (App. Div. 2013).  The court also considers the following factors:

> (1) the financial circumstances of the parties;
>
> (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;
>
> (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;
>
> (4) the extent of the fees incurred by both parties;
>
> (5) any fees previously awarded;
>
> (6) the amount of fees previously paid to counsel by each party;
>
> (7) the results obtained;
>
> (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and
>
> (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c).]

A trial court's failure to consider the appropriate factors, make the required findings, and state its conclusions of law, constitutes a clear abuse of discretion. See Saffos v. Avaya, Inc., 419 N.J. Super. 244, 271 (App. Div. 2011). Ordinarily, the purpose of a counsel fee award in a matrimonial action is to equalize the relative financial resources of the parties. J.E.V., 426 N.J. Super. at 493 (citing Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992))

"Simple omnibus references to the rules without sufficient findings to justify a counsel fee award makes meaningful review of such an award impossible . . . ." Loro, 354 N.J. Super. at 228. If the court performs its obligation under the statute and rules, and "there is satisfactory evidentiary support for the trial court's findings, 'its task is complete and [a reviewing court] should not disturb the result, even though it . . . might have reached a different conclusion were it the trial tribunal.'" Reese, 430 N.J. Super. at 568 (quoting Beck, 86 N.J. at 496). Conversely, a remand is appropriate if the trial court fails to adequately explain an award or denial of counsel fees. See Giarusso v. Giarusso, 455 N.J. Super. 42, 54 (App. Div. 2018) (citing Loro, 354 N.J. Super. at 227-28).

Here, the motion judge awarded counsel fees to defendant without considering all the relevant factors. The amount of counsel fees awarded is not

13

stated in the order but plaintiff claims in his merits brief the amount is either $2,900 or $3,000. In her order, the motion judge simply relied on the frivolous nature and alleged bad faith of plaintiff in filing the December 28, 2022 emergent OTSC and his subsequently filed motion two hours later. The motion judge did not make detailed findings under Rules 5:3-5(c), 4:42-9, and RPC 1.5(a). Thus, we are constrained to reverse the order granting counsel fees and remand for the motion judge to consider the requisite factors and conduct the appropriate analysis. We have no opinion on the outcome of the counsel fee decision.

We conclude that the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION